**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **RAFAEL RODRIGUEZ-SANCHEZ in his personal capacity and in representation and on behalf of his minor daughter C.R.T., ALEXIS R. RODRIGUEZ-MEDINA, RANDALL RODRIGUEZ-MEDINA, and RICARDO G. RODRIGUEZ-MEDINA** | **CIVIL NO.**                    (        ) <br><br> Torts (Medical Malpractice) |
| **PLAINTIFFS** | |
| **vs.** | |
| **UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS** | |
| **DEFENDANTS** | |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs, Rafael Rodríguez-Sánchez, in his personal capacity and in representation and on behalf of his minor daughter C.R.T., Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, and Ricardo G. Rodríguez-Medina, through the undersigned attorney and very respectfully aver and pray as follows:

### I.   JURISDICTION AND VENUE

1.  This Honorable Court has jurisdiction over the subject matter in the captioned case pursuant to the Federal Torts Claims Act (FTCA) of June 25, 1948, codified in Title 28, United States Code, Sections §1346(b) and §§2671-2680 (28 U.S.C. §1346(b) and §§2671-2680),

1

Articles 1802 and 1803 of the Puerto Rico Civil Code, Title 31 Puerto Rico Laws Ann. §§5141-5142, and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

2.  Venue lies properly in this United States District Court for the District of Puerto Rico, since the facts alleged in the Complaint occurred in Puerto Rico.

3.  At all times pertinent to this action, Defendant United States of America, by and through the United States Department of Veterans Affairs owned and operated the Veterans Affairs Medical Center in San Juan, Puerto Rico.

## II.  **THE PARTIES**

4.  Plaintiff Rafael Rodríguez-Sánchez is 60 years old, divorced, disabled veteran, and resident of San Juan, Puerto Rico, (hereinafter referred to as "Plaintiff Rodríguez-Sánchez"). Plaintiff Rodríguez-Sánchez is the natural father of a minor child (hereinafter "C.R.T."), Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, and Ricardo G. Rodríguez-Medina.  Plaintiff Rodríguez-Sánchez was awarded full legal custody of his minor daughter C.R.T. by court decree, which was issued by a local court of competent jurisdiction.

5.  C.R.T., is 14-years old, female, and resident of San Juan, Puerto Rico.  At the present time, C.R.T. lives under the care and custody of her father, Plaintiff Rodríguez-Sánchez.

6.  Plaintiff Alexis R. Rodríguez-Medina is of legal age, single, an employee of a manufacturing company of consumable goods in the mainland, and resident of the State of Pennsylvania.

7.  Plaintiff Randall Rodríguez-Medina is of legal age, single, an employee of the United States National Cemetery, and resident of Toa Alta, Puerto Rico.

8.  Plaintiff Ricardo G. Rodríguez-Medina is of legal age, single, bar tender, and resident of San Juan, Puerto Rico.

9.  Co-defendant United States of America (hereinafter "United States"), by and through the Co-defendant, United States Department of Veterans Affairs, owned and operated the Veterans Affairs Medical Center in San Juan, Puerto Rico (hereinafter "VA Medical Center").

10.  Co-defendant United States Department of Veterans (hereinafter "VA") Affairs operates the nation's largest integrated health care system, with more than 1,700 hospitals, clinics, community living centers, domiciliaries, readjustment counseling centers, and other facilities in the Continental United States and Puerto Rico; administers a variety of benefits and services that provide financial and other forms of assistance to Servicemembers, Veterans, their dependents and survivors; and operates various hospitals and clinics throughout Puerto Rico. The VA Medical Center is the largest full-service VA hospital in Puerto Rico, and it has been the facility where Plaintiff Rodríguez-Sánchez has received continuous medical treatment since approximately 1987.

### III.  COMPLIANCE WITH THE FTCA – FILING OF ADMINISTRATIVE TORT AND DERIVATIVE TORT CLAIMS

11.  The captioned plaintiffs filed administrative claims, in proper form with the proper government agent, against Co-defendant United States.  Copies of the claims are attached as Exhibits 1 – 5.  The VA Office of Regional Counsel 02 denied Plaintiff Rodríguez-Sánchez' administrative claim.  However, the 6-month waiting period for filing this action has not elapsed.

12.  In March 2013, the captioned Plaintiffs filed with Co-defendant VA one administrative tort claim and four other derivative tort claims alleging negligence on the part of the Co-defendants, and/or their agents, apparent agents, employees, servants, representatives, and contractors during the provision of medical treatment to Plaintiff Rodríguez-Sánchez while he was a patient at the VA Medical Center.  The filing of the referenced administrative claims is a jurisdictional requirement under the FTCA.

13.  Plaintiff Rodríguez-Sánchez files this action within the mandatory 6-month filing period after his receipt of the VA's notice of denial of his claim pursuant to Title 28, United States Code, Section §2401(b) (28 U.S.C. §2401(b).

14.  On March 1st, 2013, Plaintiff Rodríguez-Sánchez filed before Co-defendant VA a claim for injury.  Notwithstanding, the VA Office of Regional Counsel 02, located in St. Petersburg, Florida, denied Plaintiff Rodríguez-Sánchez' administrative tort claim on July 29, 2013.

15. On March 6, 2013, Plaintiff Rodríguez-Sánchez submitted before Co-defendant VA a derivative claim on behalf of his daughter C.R.T.

16.  Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, and Ricardo G. Rodríguez-Medina submitted three separate derivative claims before Co-defendant VA on March 11, March 8, and March 8, 2013, respectively.

17.  Although the VA Office of Regional Counsel 02 has not yet denied the four derivative claims filed by Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, Ricardo G. Rodríguez-Medina, and Plaintiff Rodríguez-Sánchez, on behalf of his minor daughter C.R.T., the captioned plaintiffs believe that this Honorable Court has jurisdiction to entertain this action

4

inasmuch as Co-defendant VA has already denied the administrative tort claim filed by Plaintiff Rodríguez-Sánchez, and the other four derivative claims are inextricably linked to the notice of denial issued by the VA Office of Regional Counsel 02 against Plaintiff Rodríguez- Sánchez.   In other words, the notice of denial issued by the VA Office of Regional Counsel 02 against Plaintiff Rodríguez-Sánchez operates ex propio vigore against the other four derivative claims filed by Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, Ricardo G. Rodríguez-Medina, and Plaintiff Rodríguez-Sánchez, on behalf of his minor daughter C.R.T.  Consequently, are all four administrative derivative claims should also be deemed to have been denied by the VA Office of Regional Counsel 02.

### IV. <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

18.  The facts giving rise to the Defendant's liability in this case are set forth below.

19.  On or about March 11, 2011, Plaintiff Rodríguez-Sánchez was admitted as a patient at the VA Medical Center, Puerto Rico, to undergo surgery for diverticulitis as it had been previously scheduled by Co-defendant United States and Co-defendant VA medical personnel at the facility.

20.  On that same day, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, performed the referenced surgery on Plaintiff Rodríguez-Sánchez.

21.  Plaintiff Rodríguez-Sánchez was then transferred to the surgery room and Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, performed surgery on him for diverticulitis.

5

22.  Notwithstanding, Plaintiff Rodríguez-Sánchez was never advised of the outcome of the surgery.  He did learn, however, sometime thereafter that Co-defendant United States and Co-defendant VA medical personnel had removed a section of his intestines (6 inches).

23.  Plaintiff Rodríguez-Sánchez remained hospitalized for approximately two days at the VA Medical Center.  He was subsequently discharged from the hospital and allowed to go home.

24.  Prior to Plaintiff Rodríguez-Sánchez' discharge from the VA Medical Center, Co-defendant United States and Co-defendant VA advised him to continue to take the prescribed antibiotics, to follow the prescribed diet, and to avoid strenuous physical activity.  Plaintiff Rodríguez-Sánchez strictly followed all medical instructions provided to him.

25.  However, Plaintiff Rodríguez-Sánchez continued to experience increasing pain and tenderness in his abdominal region for the next several days.  Plaintiff Rodríguez-Sánchez believed that the pain was naturally related to the diverticulitis surgery which had been performed several days earlier.

26.  The abdominal pain was unbearable and became progressively worse each day. This afflicted Plaintiff Rodríguez-Sánchez tremendously and caused him terrible emotional distress.

27.  After only approximately five days after the surgery, Plaintiff Rodríguez-Sánchez was already confined to bed.  He could barely walk to his bathroom to take care of his biological needs.

28.   On the seventh day after the surgery (Friday, March 18, 2011) the pain got so severe that Plaintiff Rodríguez-Sánchez' son, Randall Rodríguez-Medina, had to transport him at approximately 2:00 AM to the VA Medical Center Emergency Room for treatment.

29.   Plaintiff Rodríguez-Sánchez was again admitted to the VA Medical Center and Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, performed a series of medical procedures on plaintiff for the next two days.  Co-defendant United States and Co-defendant VA medical personnel introduced special instruments and hoses into Plaintiff Rodríguez-Sánchez' digestive tract, nose, and stomach.  Further, Co-defendant United States and Co-defendant VA drained Plaintiff Rodríguez-Sánchez' stomach several times.  Plaintiff Rodríguez-Sánchez received neither water nor any food during this period.

30.   Notwithstanding the above procedures, Plaintiff Rodríguez-Sánchez' abdominal pain did not subside.  On the contrary, the pain increased in severity, intensity, and duration.

31.   Approximately two days later, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, decided to perform a second surgery on Plaintiff Rodríguez-Sánchez.  Plaintiff Rodríguez-Sánchez believes that Co-defendant United States and Co-defendant VA asked him to subscribe a release of liability prior to surgery.  Co-defendant United States and Co-defendant VA also suggested to Plaintiff Rodríguez-Sánchez to execute a last will and testament in the event he passed away during surgery.  This caused Plaintiff Rodríguez-Sánchez' former spouse, Nyrma I. Medina-Martínez, to seek the assistance of another person to administer to

7

Plaintiff Rodríguez-Sánchez his last rites due to the gravity of his medical condition and the impeding high-risk surgery.

32.   Plaintiff Rodríguez-Sánchez' fragile medical condition and the risks associated with this second surgery were quickly communicated to his four children.   Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, Ricardo G. Rodríguez-Medina, and the minor C.R.T. soon feared that their father could die during surgery.

33.   On March 21, 2011, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, operated on Plaintiff Rodríguez-Sánchez to find out the root cause of the abdominal pains.  This time, Co-defendant United States and Co-defendant VA removed another section (8 inches) of the plaintiff's intestines.  Also, Co-defendant United States and Co-defendant VA utilized numerous metal surgical staples to close the abdominal incision.

34.   Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, mutilated Plaintiff Rodríguez-Sánchez' abdomen by causing a grotesque 10-inch long scar.  The mutilation of the abdomen caused enormous pain to Plaintiff Rodríguez-Sánchez.

35.   Plaintiff Rodríguez-Sánchez' pain was so intense and unbearable, that Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, maintained Plaintiff Rodríguez-Sánchez on morphine for a period of two weeks after the second surgery was performed, along with other medication.  Co-defendant United States and Co-defendant VA even allowed Plaintiff Rodríguez-Sánchez to self-administer the morphine himself by pressing on a machine button

that regulated the amount of morphine which could be discharged directly into plaintiff's blood system.

36.  After surgery, Plaintiff Rodríguez-Sánchez remained hospitalized at the VA Medical Center for observation for approximately 2 weeks.

37.  Plaintiff Rodríguez-Sánchez was subsequently discharged from the VA Medical Center and sent home to recuperate.

38.  By then, Plaintiff Rodríguez-Sánchez had already lost between 40 to 50 pounds in body weight.

39.  Approximately two days after being discharged from the VA Medical Center, Plaintiff Rodríguez-Sánchez fell inside his home bathroom after he woke up in the middle of the night to urinate.  Immediately after he entered the bathroom he sat down on the toilette seat to urinate.  After he finished urinating, Plaintiff Rodríguez-Sánchez got up from the toilette and attempted to walk in the direction of his bedroom.  However, he felt terribly weak, lost his balance, and struck his head against the bathroom door stopper and one of the bathroom walls.  He sustained a severe head concussion and experienced continuous bleeding in the cranial region.  Immediately thereafter, his son Randall Rodríguez-Medina transported him to the VA Medical Center Emergency Room for medical treatment.  Co-defendant United States and Co-defendant VA treated plaintiff's head injury by fastening approximately 10 metal surgical staples to close the head wound.

40.  Plaintiff Rodríguez-Sánchez was hospitalized at the VA Medical Center for a third time for approximately five days.  During this period, Plaintiff Rodríguez-Sánchez continued to experience severe pain in his abdomen and head.

41.  Plaintiff Rodríguez-Sánchez was subsequently discharged from the VA Medical Center and sent home to recuperate from the abdominal surgeries and head concussion.

42.  Plaintiff Rodríguez-Sánchez subsequently returned to the VA Medical Center for the cleansing of his abdominal region.

43.  Approximately two weeks later, Plaintiff Rodríguez-Sánchez attended a medical appointment at the VA Medical Center to remove the metal surgical staples which Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, fastened to plaintiff's abdomen as a result of the second surgery in the abdomen.

44.  Then, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, proceeded to remove the metal surgical staples from Plaintiff Rodríguez-Sánchez' abdomen.

45.  Several days after, Plaintiff Rodríguez-Sánchez noticed that the abdomen incision was excreting pus and body fluids down the abdominal surgical line. As per the advice of a nurse—employed by Co-defendant United States and Co-defendant VA—who provided home medical treatment, Plaintiff Rodríguez-Sánchez proceeded to visit the VA Medical Center Emergency Room for medical personnel to examine his abdomen.  On this occasion, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, advised Plaintiff Rodríguez-Sánchez that the abdominal incision was very infected.  Immediately thereafter, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, proceeded to reopen the abdomen incision to flush out the

10

pus and the body fluids.  According to Co-defendant United States and Co-defendant VA, this would dry out the incision wound and allow it to heal more rapidly.  Co-defendant United States and Co-defendant VA did not administer any anesthesia to Plaintiff Rodríguez-Sánchez during the medical procedure.

46.  Plaintiff Rodríguez-Sánchez was subsequently discharged that same day from the VA Medical Center and was sent home again to recuperate.

47.  Plaintiff Rodríguez-Sánchez' abdominal pains continued for several weeks.  His abdominal wound continued to excrete abdominal fluids and pus.  The incision in the abdomen never seemed to heal.

48.  On May 25, 2011, Plaintiff Rodríguez-Sánchez attended a medical appointment at the VA Medical Center for cleansing of the surgery abdominal area.  On this occasion, a nurse, whose last name was Abrams, noticed a strange object protruding from Plaintiff Rodríguez-Sánchez' abdomen.  Nurse Abrams then called another physician to further examine Plaintiff Rodríguez-Sánchez.  Upon information and belief, Nurse Abrams and the referenced attending physician were employed by Co-defendant United States and/or Co-defendant VA.

49.  The attending physician conducted a thorough medical examination of Plaintiff Rodríguez-Sánchez' abdomen.  Several minutes later, the physician removed a 4-inch long (approximate size) metal rod from the plaintiff's abdomen.  Plaintiff Rodríguez-Sánchez experienced an acute, excruciating pain as the physician pulled on the metal rod.  The physician then showed the object to Plaintiff Rodríguez-Sánchez and elicited the following words: Do you know how this (referring to the 4-inch metal rod) got here?

11

50.  Plaintiff Rodríguez-Sánchez was shocked when he learned that the Co-defendant United States and Co-defendant VA had left behind a 4-inch long metal rod inside his abdomen when they performed surgery on him.

51.  Plaintiff Rodríguez-Sánchez was subsequently discharged from the VA Medical Center and sent home to recuperate.  Soon thereafter, Plaintiff Rodríguez-Sánchez noticed a gradual improvement in his health condition and that the abdominal pains were gradually subsiding.

52.  Plaintiff Rodríguez-Sánchez' abdominal wound healed completely about one month after Co-defendant United States and Co-defendant VA removed the 4-inch long metal rod from his abdomen.

## V.  COUNT ONE - CLAIM FOR NEGLIGENCE

53.  All averments, statements and allegations contained in paragraphs 1 to 52 above are incorporated by reference as if fully set forth herein.

54.  Co-defendant United States and Co-defendant VA, as owners and operators of the VA Medical Center, by and through their agents, apparent agents, employees, servants, representatives, and contractors, had undertaken a duty to provide proper care to Plaintiff Rodríguez-Sánchez, with that level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

55.  Notwithstanding the duty to provide proper care to Plaintiff Rodríguez-Sánchez, Co-defendant United States and Co-defendant VA, by and through their agents, apparent agents, employees, servants, representatives, and contractors, breached their duty to Plaintiff

Rodríguez-Sánchez by engaging in one or more of the following acts or omissions, all of which deviated from and fell below the accepted standards of medical care and treatment:

a.      By negligently and carelessly failing to provide proper care to Plaintiff Rodríguez-Sánchez, in that the Co-defendants' health care providers (agents, apparent agents, employees, servants, representatives, and contractors) did not meet the level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers;

b.      By negligently and carelessly failing to possess the requisite knowledge to conduct sensitive and invasive medical surgical procedures, to include, but not limited to, for treatment of diverticulitis and other abdominal incisions;

c.      By negligently and carelessly failing to possess the requisite knowledge regarding appropriate pre-operative and post-operative measures;

d.      By negligently and carelessly failing to take appropriate and corrective medical measures to light of Plaintiff Rodriguez-Sánchez' progressively deteriorating medical condition as a result of the abdominal surgeries he was subjective to;

e.      By negligently and carelessly failing to perform appropriate physical examinations or diagnostic tests, or to order that such examinations or tests be performed on Plaintiff Rodríguez-Sánchez to avoid the continued deterioration of the plaintiff' medical state;

f.      By negligently and carelessly performing unsuccessful abdominal surgeries for diverticulitis on Plaintiff Rodríguez-Sánchez when other alternate less invasive medical procedures could have been performed on the patient;

g.      By negligently and carelessly failing to inform or warn Plaintiff Rodríguez-Sánchez of the inherent risks of submitting himself to surgery for diverticulitis as well as to other medical procedures performed on the patient;

h.      By negligently and carelessly failing to inform Plaintiff Rodríguez-Sánchez of other less invasive medical procedures which could have avoided future medical complications on the patient;

i.      By negligently and carelessly performing a second and a third abdominal surgery and/or medical procedures on Plaintiff Rodríguez-Sánchez which further aggravated the plaintiff's already delicate medical condition;

j.      By negligently and carelessly performing abdominal surgeries on Plaintiff Rodríguez-Sánchez which resulted in the development of excessive and unwanted traumatic scar tissue, permanent disfigurement of plaintiff's abdomen region, and the permanent loss of a substantial section (over one foot) of the plaintiff's intestines;

k.      By negligently and carelessly  scraping and cutting flesh from Plaintiff Rodríguez-Sánchez's abdomen which further caused trauma to the region, further aggravated unwanted traumatic scar tissue,  and caused permanent disfigurement of plaintiff's abdomen region;

l.      By negligently and carelessly  scraping and cutting flesh from Plaintiff Rodríguez-Sánchez' abdomen without administering any anesthesia to the patient;

m.      By negligently and carelessly failing to remove an extraneous 4-inch long metal rod, object, thing or medical device after performing abdominal surgeries on Plaintiff Rodríguez-Sánchez;

n.      By negligently and carelessly failing to remove an extraneous 4-inch long metal rod, object, thing or medical device from the body cavity of Plaintiff Rodríguez-Sánchez due to the distraction of the surgical team, poor communications between the members of the surgical team, simple miscount, or failure to follow up an immediate suspicion of a retained instrument, object or thing;

o.      By negligently and carelessly failing to correctly diagnose that one of the major underlying reasons which further aggravated Plaintiff Rodríguez-Sánchez' excruciating pain and suffering was Co-defendant United States' and Co-defendant VA's lack of circumspection in insuring that all objects, things, and medical devices were removed from Plaintiff Rodríguez-Sánchez body cavities once surgical medical procedures were performed;

p.      By negligently and carelessly failing to take immediate corrective medical action to avoid Plaintiff Rodríguez-Sánchez' increasingly deteriorating medical conditions and debilitating physical state;

q.      By negligently and carelessly failing to follow appropriate guidelines concerning care and supervision of Plaintiff Rodríguez-Sánchez in light of patient's worsening medical condition;

r.      By negligently and carelessly failing to adequately warn Plaintiff Rodríguez-Sánchez of the dangers of performing surgery for diverticulitis and other medical complications;

s.      By negligently and carelessly failing to examine and/or monitor to insure that Plaintiff Rodríguez-Sánchez' medical condition would not be medically compromised or further aggravated;

t.      By negligently and carelessly failing to provide Plaintiff Rodríguez-Sánchez immediate, efficient, and adequate medical care;

u.      By negligently and carelessly failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff Rodríguez-Sánchez;

v.      By negligently and carelessly failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed Plaintiff Rodríguez-Sánchez true medical condition and dictated a different course of care and treatment;

w.      By negligently and carelessly failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures as to avoid performing continued surgical procedures on Plaintiff Rodríguez-Sánchez;

x.      By negligently and carelessly discharging on repeated occasions Plaintiff Rodríguez-Sánchez from the VA Medical Center despite his fragile medical condition and which further aggravated pain and delayed the process of recuperation of the abdominal surgical incisions;

y.      By negligently and carelessly discharging Plaintiff Rodríguez-Sánchez from the VA Medical Center knowing full well of the dangers and inherent risks of the patient experiencing further injuries and unwanted protracted medical recuperation;

z.       By negligently and carelessly discharging Plaintiff Rodríguez-Sánchez from the VA Medical Center which caused him to fall at his home bathroom and strike his head against the door stopper and one of the bathroom walls and which further required the fastening of metal staples on his cranial region due to a severe head concussion and continuous bleeding;

16

aa.     By negligently and carelessly failing to adequately supervise, care for, and otherwise prevent Plaintiff Rodríguez-Sánchez from getting out of bed which was the proximate cause of Plaintiff's fall and of the resulting injuries sustained from the fall while he was recuperating at his house under the medical care of Co-defendant United States' and Co-defendant VA's agents, apparent agents, employees, servants, representatives, and contractors;

bb.     By negligently and carelessly failing to prevent further injury and pain on Plaintiff Rodríguez-Sánchez while he was under the sole and exclusive control of the Defendant's health care providers (agents, apparent agents, employees, servants, representatives, and contractors) while at the medical center;

cc.     By negligently and carelessly failing to provide follow-up care subsequent to surgeries performed on March 11 and March 21, 2011; and,

dd.     By negligently and carelessly failing to inform Plaintiff Rodríguez-Sánchez of the outcome of each of the surgeries and/or other medical procedures performed.

56. Co-defendant United States and Co-defendant VA, as owners and operators of the VA Medical Center, failed to exercise the degree of care, skill, and learning expected of a reasonably prudent health care provider acting under the same circumstances in the mainland and in Puerto Rico as of March-June 2011.  Further, Co-defendant United States and Co-defendant VA were negligent in that they failed to advise Plaintiff Rodríguez-Sánchez of other less invasive medical procedures which could have avoided future medical complications on the patient.  Plaintiff Rodríguez-Sánchez consented to the abdominal surgeries without knowledge of these material acts.  A reasonable prudent person under the same circumstances would not

have consented to the extremely invasive medical procedures performed on Plaintiff Rodríguez-Sánchez.

57.   As a direct and proximate result of Co-defendant United States' and Co-defendant VA' negligence and carelessness, a 4-inch long metal rod was negligently left in Plaintiff Rodríguez-Sanchez' abdomen during surgery for no therapeutic or diagnostic purpose and the co-defendants failed to diagnose the presence of this metal rod even though plaintiff's condition began to deteriorate and plaintiff constantly complained of pain in the abdominal region, and the co-defendants failed to remove the metal rod from plaintiff's abdomen and all while plaintiff became more ill and sick.  As a direct and proximate cause of Co-defendant United States' and Co-defendant VA' negligence and carelessness, Plaintiff Rodríguez-Sánchez sustained injuries and substantial damages.

58.   Plaintiff Rodríguez-Sánchez exercised reasonable care and did everything the law required of him in that he promptly sought and kept seeking and obtaining medical care for his abdominal pain, and it was not until May 25, 2011, when Co-defendant United States and Co-defendant VA discovered the 4-inch long metal rod and proceeded to remove the object from Plaintiff Rodríguez-Sanchez' abdomen.  By the time of the discovery and removal of the metal rod and as a proximate cause of the presence of the metal rod, Plaintiff Rodríguez-Sánchez' health and condition was seriously and permanently damaged.

59.   Between the time that Plaintiff Rodríguez-Sánchez first south medical care and the treatment provided by Co-defendant United States and Co-defendant VA on May 25, 2011— when the 4-inch metal rod was removed—the co-defendants negligently, carelessly, and wrongfully diagnosed, examined, treated, cared for, operated on, and abandoned plaintiff.  In

addition, Co-defendant United States and Co-defendant VA failed to provide adequate, proper, immediate, and timely medical care and treatment.  The Co-defendant United States and Co-defendant VA failed to follow the standard of practice of medicine in Puerto Rico, or similar localities, in the performance of surgery, in the performance of postsurgical care, and in the treatment, care, and diagnosis of Plaintiff Rodríguez- Sánchez' medical condition.

60.   Between the time that Plaintiff Rodríguez-Sanchez first sought medical care and the treatment provided by Co-defendant United States and Co-defendant VA on May 25, 2011, Plaintiff Rodríguez- Sánchez' was unable to devote full time and attention to his minor daughter C.R.T. and his three other sons, Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, and Ricardo G. Rodríguez-Medina.  As a direct and proximate result of the negligence on the part of Co-defendant United States and Co-defendant VA, Plaintiff Rodríguez- Sánchez suffered severe emotional distress and loss of capacity for the enjoyment of life with his family.

61.   As a direct and proximate result of one or more of the foregoing negligent acts or omissions on the part of Co-defendant United States and Co-defendant VA, Plaintiff Rodríguez-Sánchez, has in the past suffered and will in the future continue to suffer bodily injury, pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, severe mobility restriction, impaired bodily functions, feelings of hopelessness, expenses of hospitalization, and medical and nursing care and treatment.

62.   The Plaintiffs reserve the right to amend the present cause of action as circumstances may warrant.

## VI. COUNT TWO – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

63.  All averments, statements and allegations contained in paragraphs 1 to 62 above are incorporated by reference as if fully set forth herein.

64.  Plaintiff Rodríguez-Sánchez' minor daughter C.R.T. experienced severe emotional distress and anguish for a period of over three months.  During this period of time, the minor child was unable to share activities and experiences which naturally bounded her to her custodial parent, Plaintiff Rodríguez-Sánchez.

65.  After a long struggle in local courts, Plaintiff Rodríguez-Sánchez was awarded full legal custody of the minor child after the child's mother was declared unfit to raise her daughter.  At the age of 8, the child moved into her father's house.  Since then, Plaintiff Rodríguez-Sanchez has been the only person with whom the minor child has had an enduring and affectionate parental relationship.  Her father has always provided her assistance, companionship, comfort, love, affection, and solace.

66.  The minor child experienced feelings of hopelessness and mental anguish as she watched her father endure excruciating pain and repeated visits to the hospital for surgeries and endless medical procedures.

67.  Further, C.R.T. believed that her father would pass away as a result of his fragile medical condition and traumatic events which repeated landed him in the hospital.  This tormented her enormously.  She feared that if her father died, she would be left alone to fend for herself inasmuch as she had never received any type of support from her mother.

68.  Moreover, the minor child was unable to interact with her father while he was hospitalized at the VA Medical Center.  She was only allowed to see her father once due to

20

existing hospital policies which severely restricted the minors from visiting patients in critical condition at the hospital.

69.   While at home, the minor experienced tremendous sorrow for her father as he battled the countless medical procedures he was exposed to as well as the second and third order effects of the medical complications which surfaced throughout the protracted healing process.

70.   Based on the foregoing, Plaintiff Rodríguez-Sánchez, in representation and on behalf of his minor daughter C.R.T., holds Co-defendant United States and Co-defendant VA responsible and liable for the negligent infliction of emotional distress caused to the minor as she witnessed the pain, anguish, and suffering her father endured for months as well as for terrible feelings of loneliness and uncertainty which caused her to question herself what she would do if her father suddenly passed away at any of the surgeries and/or the other medical procedures performed on her father.

71.   With respect to Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, and Ricardo G. Rodríguez-Medina, they also collectively suffered severe emotional distress and mental anguish as a result of watching their father struggle with the endless medical procedures which he was needless subjected to by Co-defendant United States and Co-defendant VA.  They repeatedly called each other to find out how well their father was doing between visits to the VA Medical Center, constant surgeries, medical complications, trips to the emergency room in the middle of the night, etc.  Although they tried to comfort each other, they honestly believed that their father would die when he had to be rushed to the VA Medical Center after the first surgery.  The administration of the last rites to their father in preparation of the second surgery

21

was particularly troubling to them as well as for their half-sister C.R.T., since they feared that their father would pass away due to gravity of his medical condition and the high-risk surgery.

72. To Alexis, Randall, and Ricardo, their father had always been a caring and loving person. Their father had at all times sacrificed for them, and they felt extreme sadness as they watched how his health deteriorated in a period of just several weeks. Even when they tried to cheer him up, they noticed the shallow look on their father's face as if he was simply awaiting his inevitable death. This further depressed Alexis, Randall, and Ricardo.

73. Although Randall (and his minor half-sister C.R.T.) had to deal directly with his father every time his medical condition worsened, Alexis and Ricardo were always concerned for their father's wellbeing. Distance proved to be a challenge to Alexis since he was residing in State of Pennsylvania at the time of Co-defendant United States' and Co-defendant VA' negligence acts and/or omissions and did not have the resources to defray his transportation expenses to the Island.

74. In sum, the derivative claims filed by by Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, Ricardo G. Rodríguez-Medina, and Plaintiff Rodríguez-Sánchez, on behalf of his minor daughter C.R.T., are hereby adopted and incorporated by reference as if fully set forth herein.

75. The Plaintiffs reserve the right to amend the present cause of action as circumstances may warrant.

## VII. <u>THIRD CAUSE OF ACTION: DAMAGES UNDER</u>

## <u>ARTICLES 1802 AND 1803 OF THE PUERTO RICO CIVIL CODE</u>

76.  All averments, statements and allegations contained in paragraphs 1 to 75 above are incorporated by reference as if fully set forth herein.

77.  Article 1802 of the Puerto Rico Civil Code provides where pertinent that "*[a] person who by act or omissions cause damages to another through fault or negligence shall be obligated to repair the damage so done*." *See* 31 P.R. Laws Ann. § 5141. Further, Article 1803 of the Puerto Rico Civil Codes provides that the Government can be held responsible and liable for the same acts or omissions which an ordinary natural personal would be held liable. *See* 31 P.R. Laws Ann. § 5142.

78.  As a direct and proximate result of the tortious conduct of Co-defendant United States and Co-defendant VA, Plaintiff Rodríguez-Sánchez has suffered pain and suffering, both physical and emotional, in an estimated amount of no less than $1,000,000.00, a sum which does not exceed Plaintiff' administrative claim.

79.  As a direct and proximate result of the tortious conduct of Co-defendant United States and Co-defendant VA, Plaintiff Rodríguez-Sánchez' minor daughter, C.R.T., has experienced extreme suffering in an estimated amount of no less than $100,000.00, a sum which does not exceed the administrative claim filed on behalf of the minor.

80.  As a direct and proximate result of the tortious conduct of Co-defendant United States and Co-defendant VA, Plaintiff Randall Rodríguez-Medina has experienced extreme suffering in an estimated amount of no less than $100,000.00, a sum which does not exceed the plaintiff's administrative claim.

23

81.  As a direct and proximate result of the tortious conduct of Co-defendant United States and Co-defendant VA, Plaintiff Alexis R. Rodríguez-Medina has experienced extreme suffering in an estimated amount of no less than $100,000.00, a sum which does not exceed the plaintiff's administrative claim.

82.  As a direct and proximate result of the tortious conduct of the Co-defendant United States and Co-defendant VA, Plaintiff Ricardo G. Rodríguez-Medina  has experienced extreme suffering in an estimated amount of no less than $100,000.00, a sum which does not exceed the plaintiff's administrative claim.

83.  The captioned plaintiffs reserve the right to amend the present cause of action as circumstances may warrant.

## VIII. PRAYER FOR RELIEF

Plaintiffs respectfully request from this Honorable Court:

A.  Award an amount of no less than $1,000,000.00 to Plaintiff Rodríguez-Sánchez and an amount of no less than 100,000.00 to the remaining other four plaintiffs, to wit: Alexis R. Rodríguez-Medina, Randall Rodríguez-Medina, Ricardo G. Rodríguez-Medina, and Plaintiff Rodríguez-Sánchez, on behalf of his minor daughter C.R.T.;

B.  Award Plaintiffs' attorney's fees and costs incurred; and,

C.  Grant Plaintiffs any and all other relief to which they may be justly entitled.

**WHEREFORE,** the Plaintiffs seek all general and special damages allowed under federal and state law, in addition to costs, interests, and attorney's fees allowed under federal and state law.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico this 27th day of January 2014.

**RAUL E. BANDAS LAW OFFICES, P.S.C.**
PO Box 362159
San Juan, Puerto Rico 00936-2159
Tel. (787) 754-6664
Fax.  (787) 754-5001
E-mail: bandaslaw@gmail.com

//S//
**RAÚL E. BANDAS**
USDC-PR 207809